No. 84-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

FAYE ANN MADDOX,

Plaintiff and Appellant,

-vs-

FRANK A. NORMAN, JR., and
GLORIA NORMAN and NORMAN
RANCHES, INC.,

Defendants and Respondents.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Berg, Coil, Stokes & Tollefsen, Bozeman, Montana

For Respondent:

Moore, Rice, O'Connell & Refling, Bozeman, Montana

_____

Submitted on Briefs: Jan. 24, 1985

Decided: April 16, 1985

Filed: APR 1 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison delivered the Opinion of the Court.

This is an appeal from the District Court's judgment valuing stock, rendered on remand from the original appeal to this Court. This Court's initial decision, published in Maddox v. Norman (Mont. 1983), 669 P.2d 230, 40 St.Rep. 1463, provides a detailed factual account.

Faye Ann Maddox and T. Donald Norman, brother and sister, brought an action in November, 1980 against their brother Frank A. Norman Jr., mother, Gloria E. Norman, and Norman Ranches, Inc., to have a receiver appointed to sell assets of the family ranch corporation. This Court affirmed the trial judge's decision ordering Faye Maddox to sell her 75 shares to the corporation. We remanded the case for additional testimony supporting valuation of corporate net worth and 75 shares of stock.

In 1961 Frank Norman, Sr. incorporated his family ranch, Norman Ranches, Inc. He deeded title to 1140 acres to the family corporation in 1963. Frank, Jr., remained on the ranch with his father and mother while Faye and Don left to pursue other lifestyles. At the time of the initial action ownership of corporate shares was allocated as follows:

| | |
|---|---|
| Frank, Jr. | 849 shares |
| Gloria | 1 share |
| Faye | 75 shares |
| Don | 75 shares |

Prior to commencement of the initial action, the corporation agreed to pay $175,000 for Faye and Don's 150 shares of stock, contingent upon financing. The corporation's failure to obtain financing caused this agreement to lapse. After the complaint was filed, Don Norman entered a settlement agreement with the corporation by which he transferred

2

his 75 shares to Norman Ranches, Inc. in exchange for $20,000 plus 20 acres of corporate land. The trial court found this settlement to be fair, reasonable and voluntary and removed Don as a party plaintiff in the action against Norman Ranches, Inc. Faye refused the corporation's offer to settle on the same terms accepted by Don. After a bench trial the trial judge ordered Faye to sell her 75 shares of ownership in the corporation pursuant to the same terms of Don's settlement: $20,000 plus a 20 acre tract of corporate land, comparable in value to the land deeded to Don. This Court remanded the action to the District Court for evidence supporting the net value of the corporation and the appraised value of the proposed 20 acres to be transferred to Faye in return for her stock holdings. Appellant appeals the District Court's valuation of her stock ownership.

On appeal the following issues are presented:

1. Whether the court erred in determining the net worth of the corporate assets.

2. Whether the court erred in employing an agricultural appraisal to evaluate corporate lands and plaintiff's share value, but applying subdivision appraisal to determine the exchange value of plaintiff's shares.

3. Whether the court erred in failing to consider the "agreed" value of plaintiff's stock in determining her "share" value.

4. Whether the gain realized by the purchase of the Gervais section is in part a corporate asset.

Appellant's four issues may be consolidated into a singular dispositive issue: Whether the District Court awarded proper value to Faye Ann Maddox for her share of stock in Norman Ranches, Inc.

3

On remand, this Court directed the lower court to consider certain items of evidence in determining the value of appellant's stock. These specific items include:

1.   A corporate balance sheet documenting assets and liabilities of Norman Ranches, Inc.

2.   An accounting by Frank Norman, Jr., of all corporate funds including corporate rental income, lease proceeds, and loan proceeds.

3.   A claim by Frank, Jr., and Gloria for any or all labor or improvements to corporate property.

4.   Appraisals of all the lands proposed to be transferred in exchange for Faye's corporate ownership.

Having received these accounting documents and appraisals into evidence, the trial judge entered its initial judgment on April 26, 1984.

In Finding of Fact No. 19, the lower court found:

"19.   The net worth of the corporation as of December 31, 1983 is as follows:

| | |
|---|---|
| Fair market value of land and improvements | $640,000.00 |
| Balance of 1970 loan to Frank Norman, Jr. | 52,550.00 |
| Profits receivable from Frank Norman, Jr. | 55,800.00 |
| Cash | ( 25.00) |
| Less Federal Land Bank note | ( 52,550.00) |
| Less improvements made by Normans | ( 38,090.00) |
| NET WORTH | $657,685.00" |

Faye's 75 shares evidenced a 7.5 percent ownership in the family corporation.   Accordingly, the trial judge calculated the fair market value of Faye Maddox's stock as $49,326.38 which is 7.5 percent of the net corporate worth, $657,685.00.

The trial judge also held the expired $175,000 purchase agreement for 150 shares established the "top value for these

4

shares" and that Don's settlement agreement of $20,000 plus 20 acres of corporate land was "the lowest value for Faye Maddox's shares." In Finding No. 16 the trial judge found:

> ". . . Therefore, the value of Faye Maddox's shares lies somewhere between FORTY THOUSAND DOLLARS ($40,000) and EIGHTY-SEVEN THOUSAND FIVE HUNDRED DOLLARS ($87,500.00)."

At the accepted appraised value of $2,000 per acre, the twenty-acre tract is worth $40,000. This land value plus $20,000 in cash establishes a "floor" on the value of Faye's stock of $60,000 instead of the $40,000 value quoted in the initial judgment.

In its amended judgment on June 12, 1984, the trial judge justified the original value of $49,326.38 for Faye's stock ownership as follows:

> "Findings of fact number 15 and 16 contain obvious arithmetic errors. The value of T. Donald Norman's stock is $20,000 plus the 20 acre tract valued at $2,000 per acre, for a total value of $60,000. The court cannot rationally conclude that this established the lower value of the plaintiff's stock because by the very nature of a compromise settlement, the ultimate value could have been higher or lower depending on whether the facts are viewed in favor of either party. For this reason findings of fact number 15 and 16 are stricken."

The trial court did not disturb its original decision ordering Faye Maddox to transfer her 75 shares of stock in Norman Ranches, Inc.

The trial judge distributed the total amount due Faye Maddox in Conclusion of Law No. 3 as follows:

> "3. Plaintiff shall transfer her 75 shares of stock in Norman Ranches, Inc. to Norman Ranches, Inc. in exchange for receiving NINE THOUSAND THREE HUNDRED TWENTY-SIX AND 38/100 DOLLARS ($9,326.38) in cash and a 20 acre tract of land which equals FORTY THOUSAND DOLLARS ($40,000.00) worth of real estate owned by the corporation. Norman Ranches,

5

Inc. shall convey tract A or tract B to Faye Ann Maddox."

We agree with the trial court's original finding that the settlement terms offered to and accepted by T. Donald Norman establish the "floor" value of 75 shares of Norman Ranches, Inc. corporate stock. Therefore, $20,000 in cash plus 20 acres of corporate land is the minimum amount which Faye Maddox can be awarded for her 75 shares of stock ownership in the family-ranch corporation.

The trial court erred by awarding the appellant $49,326.38, an amount less than the minimum value of $20,000 in cash and 20 acres of real estate. Notwithstanding the undisputed appraised value of $2,000 per acre for the 20 acres of corporate land, the assigned cash value of $40,000 constitutes an erroneous corollary valuation. Even if appellant were to sell the subject tract for a total selling price of $40,000, closing costs would considerably diminsh the actual cash realized from the sale. The probability of a contract sale also reduces the actual cash received from the sale of the twenty acres. Furthermore, the cash value of the contracts would be considerably discounted on resale. For these reasons, it is an erroneous assumption to attribute a cash value of $40,000 for twenty acres of land.

We reverse the trial court's decision and remand with the direction to pay appellant $20,000 in cash plus the 20 acres of corporate land already tendered to the trial court for transfer to appellant.

Justice

We concur:

6

_____

_____
John C. Sheehy

_____
William E. Hunt
Justices